HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAROLINA CASUALTY INSURANCE
COMPANY,

        Plaintiff,

    v.

OMEROS CORPORATION, et al.,

        Defendants.

CASE NO. C12-287RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on a motion for partial summary judgment from Plaintiff Carolina Casualty Insurance Company.  No party requested oral argument, and the court finds oral argument unnecessary.  For the reasons stated herein, the court DENIES the motion (Dkt. # 16), except as to the issue that Defendant Omeros Corporation conceded.

## II.  BACKGROUND

Carolina Casualty insured Omeros Corporation under a multi-coverage Management Liability Insurance policy, which included a Employment Practices Liability Insurance Coverage ("Employment Coverage") and a Directors, Officers and Corporate Liability Coverage ("D&O Coverage").  No one disputes that both coverages took effect no later than July 2008, that the Employment Coverage expired on July 19, 2009, and that the D&O Coverage expired on October 8, 2009.

ORDER – 1

Richard Klein is Omeros's former chief financial officer. Carolina Casualty concedes that by April 2009, he had informed Omeros of his claim that he had been unlawfully terminated for internally reporting various financial irregularities, including what he contended was false reporting to the National Institutes of Health ("NIH") regarding a federal grant that NIH supervised. When Omeros and Mr. Klein failed to reach a resolution, Mr. Klein sued in this District in September 2009. The Honorable John C. Coughenour presided over that litigation. Mr. Klein's complaint included several allegations of false reporting with respect to the NIH grant, including that several employees told him that Omeros officers had "instructed them to falsely record time on an NIH grant even though they were not actually working on the grant project for the recorded period of time," that he had relayed his concerns about the false reporting to Omeros's audit committee, that Omeros obtained outside counsel to investigate the fraudulent timekeeping, and that the audit committee concluded in December 2008 that "employees had in fact recorded time to the project financed by the NIH grant even though they were not working on the grant project for the recorded period of time." Complaint, *Klein v. Omeros* (No. C09-1342JCC, Dkt. # 1), at ¶¶ 21-27. Among other claims, he stated that Omeros had violated the anti-retaliation portions of federal False Claims Act. The Act's anti-retaliation provision prohibits adverse employment actions against employees because of "lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations" of the Act. 31 U.S.C. § 3730(h)(1).

Carolina Casualty agreed, subject to a reservation of rights, to defend Omeros in the Klein suit. It did so in accordance with the Employment Coverage. No one disputes that Carolina Casualty paid more than a million dollars in defense costs, and Omeros concedes that those payments exhausted the limits of the Employment Coverage.

ORDER – 2

During discovery in the Klein suit, Mr. Klein discovered what he contended was additional information about Omeros's false reporting to the federal government.  In November 2010, he sought leave to amend his complaint to include a *qui tam* action on behalf of the United States, asserting that Omeros had violated the False Claims Act.  His amended complaint went into substantially more detail about Omeros's false reporting of time billed on the NIH grant.  3d Amend. Complaint (No. C09-1432JCC, Dkt. # 192) at ¶¶ 39-78.  He contended that those allegations demonstrated several violations of the False Claims Act.  *Id.* ¶¶ 79.  After the United States declined to intervene in the action, Judge Coughenour dismissed all of the violations except those related to false timekeeping with respect to the NIH grant.

Carolina Casualty also agreed to provide Omeros with a defense to the *qui tam* claims, again subject to a reservation of rights.  In February 2012, it filed this suit, seeking a declaration as to its coverage obligations.  Omeros filed counterclaims contending that Carolina Casualty breached its duty to defend, that it acted in bad faith, and that it violated the Washington Insurance Fair Conduct Act.

In the motion before the court, Carolina Casualty seeks summary judgment on two issues.  It asks for a ruling that the Employment Coverage is exhausted, leaving it with no obligation to make further payments.  Omeros expressly concedes this issue, and the court will not discuss it further.  Carolina also asks for a ruling that the D&O coverage does not apply to Mr. Klein's *qui tam* action.[1]  The court now turns to that issue.

---

[1] The court's statement of the scope of this motion comes directly from the list of "Issues Presented" that Carolina Casualty included in the motion.  Dkt. # 16 at 7.  When Carolina Casualty suggested in its reply brief that it was seeking a broader ruling, Omeros filed a surreply stating its belief that the D&O Coverage applies to Mr. Klein's anti-retaliation claim, and pointing out correctly that Omeros did not address that issue in its motion.  Carolina Casualty responded by offering, for the first time, argument as to whether the D&O Coverage applies to the anti-retaliation claim.  Carolina Casualty did not raise this issue in its motion, and the court declines to allow it to raise it in an impermissible sur-surreply to the motion.  This order will not decide whether the D&O Coverage applies to the anti-retaliation claim.

ORDER – 3

### III.  ANALYSIS

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party must initially show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The opposing party must then show a genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  The court defers to neither party in resolving purely legal questions.  *See Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

Because the court's resolution of the motion before it will require it to interpret the policy Carolina Casualty issued to Omeros, the court reviews the applicable legal principles.  In Washington, insurance policy interpretation is a legal question.  *Overton*, 38 P.3d at 325 ("Interpretation of insurance policies is a question of law, in which the policy is construed as a whole and each clause is given force and effect.").  The court must give the terms of the policy a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance."  *Id.* (internal quotation omitted).  Terms defined within a policy are to be construed as defined, while undefined terms are given their "ordinary and common meaning, not their technical, legal meaning."  *Allstate Ins. Co. v. Peasley*, 932 P.2d 1244, 1246 (Wash. 1997).  Dictionaries may assist in determining the ordinary meaning of a term.  *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990).  If policy language on its face is fairly susceptible to two different but reasonable interpretations, ambiguity exists.  *Peasley*, 932 P.2d at 1246 (cited in *Petersen-Gonzales v. Garcia*, 86 P.3d 210 (Wash. Ct. App. 2004));

ORDER – 4

1     *Allstate Ins. Co. v. Hammonds*, 865 P.2d 560, 562 (Wash. Ct. App. 1994) (ambiguity

2     exists "when, reading the contract as a whole, two reasonable and fair interpretations are

3     possible."). Extrinsic evidence may provide the meaning of an ambiguous term, but only

4     where that evidence shows that both parties to the policy intended a particular meaning.

5     *Am. Nat'l Fire Ins. Co. v. B&L Trucking & Const. Co.*, 951 P.2d 250, 256 (Wash. 1998);

6     *see also Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005) ("If a

7     clause is ambiguous, [a court] may rely on extrinsic evidence of the intent of the parties

8     to resolve the ambiguity."). Because parties rarely negotiate the terms of an insurance

9     policy, there is rarely evidence of the parties' mutual intent as to the meaning of a policy

10     term. Where extrinsic evidence does not resolve an ambiguity, the court must construe

11     the ambiguous term in favor of the insured. *Weyerhaeuser Co. v. Commercial Union Ins.*

12     *Co.*, 15 P.3d 115, 141 (Wash. 2000); *see also Hammonds*, 865 P.2d at 562 (directing

13     courts to resolve ambiguity against insurer "even where the insurer may have intended

14     another meaning").

15         The policy in this case is a "claims-made" policy. It applies only to claims made

16     against an insured during the policy period and reported to the insurer within the policy

17     period or a short time thereafter. The D&O Coverage, for example, provides as follows:

18           This **Policy** shall pay on behalf of . . . the **Insured Entity** all **Loss** arising
19           from any **Claim** first made against the **Insured Entity** during the **Policy**
            **Period** and reported to the Insurer in writing during the **Policy Period** or
20           within 90 days thereafter, for any **Wrongful Act**.

Policy at 055, § I.C.[2]

21

22         Omeros does not contest that Mr. Klein's *qui tam* claim (which he did not

23     mention, even informally, until autumn 2010) was made and reported after the conclusion

24     of the policy period applicable to the D&O Coverage, which ended in October 2009. It

25     contends, however, that it can take advantage of the following policy provision:

---

[2] The court relies on the version of the policy that Carolina Casualty provided, citing the three
trailing digits of the stamp in the lower-right corner of each page. DiGioia Decl. (Dkt. # 18),
Ex. 1. When quoting the policy, the court reproduces its capitalization and use of boldface type.

ORDER – 5

All **Claims** based upon or arising out of the same **Wrongful Act** or any **Related Wrongful Acts**, or one or more series of any similar, repeated or continuous **Wrongful Acts** or **Related Wrongful Acts**, shall be considered a single **Claim**. Each **Claim** shall be deemed to be first made at the earliest of the following times:

    1.  when the earliest **Claim** arising out of such **Wrongful Act** or **Related Wrongful Acts** is first made, or

    2.  when notice pursuant to section VII.B above [relating to notice of facts "which may be reasonably expected to give rise to a **Claim**"] of a fact, circumstance or situation giving rise to such a **Claim** is given.

Policy at 051, § VII.C (hereinafter the "single-claim clause"). The D&O Coverage defines "**Related Wrongful Act(s)**" as "**Wrongful Acts**" which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event, or decision." Policy at 056, § III.J. In Omeros's view, Mr. Klein's *qui tam* claim arises out of a wrongful act that is related to the wrongful acts described in his initial complaint. Carolina Casualty does not contest that Omeros timely notified it of the claims raised in the initial complaint. Because the single-claim clause deems claims arising from related wrongful acts to be made as of the date the earliest claim was made, Omeros believes the D&O coverage extends to the *qui tam* claim.

    The court holds that the *qui tam* claim and the anti-retaliation claim Mr. Klein raised in his initial complaint are based on related wrongful acts. As the court has already noted, Mr. Klein's initial complaint discloses his belief that Omeros made false claims. That he chose not to pursue a *qui tam* claim based on that belief is immaterial, what matters is whether the *qui tam* claim is (in the language of the policy) "logically . . . connected" to the anti-retaliation claim by reason of "any common fact, circumstance, situation, transaction, casualty, event or decision." Carolina Casualty points out several differences between the anti-retaliation and *qui tam* claim. The former seeks recovery for wrongs done to Mr. Klein, the latter for wrongs done to the United States. The former does not require Mr. Klein to prove that Omeros actually made false claims, the latter does. But the policy's test for a related wrongful act is not whether there are differences

ORDER – 6

between the acts, but whether there is "any common fact, circumstance, situation, event or decision" that "logically . . . connect[s]" the acts.  Omeros's alleged false reporting is a common event that logically connects the anti-retaliation and *qui tam* claims.  The facts underlying Mr. Klein's discovery and internal disclosure of the false reporting are common facts underlying his anti-retaliation and *qui tam* claims.  The court need not go on, although it could.  *Any* common fact or event is sufficient to make two wrongful acts related, and the single-claim clause requires Carolina Casualty to treat separate claims based on those wrongful acts as if they had been made on the date of the earliest claim.

Perhaps recognizing the breadth of its definition of related wrongful acts, Carolina Casualty is prepared with a backup argument.  It notes that if the anti-retaliation claim and *qui tam* claim are indeed based on related wrongful acts, then the policy dictates that they be deemed a single claim.  Because that single claim includes an anti-retaliation claim based on a law prohibiting employers from retaliating against their employees for reporting on false claims, Carolina Casualty contends that the following exclusion applies:

> [T]he **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against any **Insured** . . . based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any past, present or future actual or potential employment relationship.

Policy at 057-58, § IV.J.

The court concludes that although "wrongful related acts" are deemed a single claim for purposes of determining if the claim was made within the policy period, they are not a single claim for purposes of applying policy exclusions that are unrelated to the claims-made nature of the policy.  The policy neither expressly dictates this result nor its opposite.  It is plain that the single-claim clause determines when claims based on related wrongful acts are deemed to be made.  The single-claim clause appears in a section of the policy entitled "Notice of Claims and Multiple Claims," Policy at 051, and that section is

ORDER – 7

devoted exclusively to explaining an insured's obligation to give notice of claims and potential claims and to determining the claims-made date for multiple related claims. Nothing in the clause suggests that it governs the application of exclusions unrelated to the claims-made nature of the policy.  It is, at best, ambiguous in that regard.  Examining that ambiguity in light of the policy as a whole leads the court to the conclusion that the single-claim clause does not govern the application of unrelated exclusions.

In claims-made policies, courts readily enforce "single-claim" clauses like the one at issue here.  For example, in *Vozzcom, Inc. v. Great Am. Ins. Co.*, 666 F. Supp. 2d 1332 (S.D. Fla. 2009), the court confronted three separate wage-and-hour lawsuits from three different employees who worked for the insured employer.  The first came before the policy period of the insured's employment coverage, the second came during the policy period, and the third came after the policy period.  *Id.* at 1333, 1335.  Considering a single-claim clause materially identical to Carolina Casualty's, *id.* at 1335, the court concluded that all three claims arose from related wrongful acts, and were thus deemed a single claim filed on the date the earliest claim was made.  *Id.* at 1339.  Similarly, in *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 807 (10th Cir. 2009), the court considered a lawyer's claim for malpractice coverage based on a claim that was first made to him during his policy period.  Because his former law partner had already made the claim before the policy period, however, the court deemed the claim a single claim that arose before the policy period.  *Id.* at 814.

Single-claim clauses are an appropriate way to define the claims-made date for related claims made at different times, thus bringing certainty to insureds and insurers in claims-made policies.  The clauses can cause "harsh result[s]" for insureds, *Berry & Murphy*, 586 F.3d at 815, but they are just as likely to cause harsh results for insurers. The insureds in the cases above had no claims, but in this case, Omeros stands to gain coverage for a claim that was first made after the policy period.

ORDER – 8

It is another matter, however, to apply single-claim clauses to exclusions that have nothing to do with the claims-made nature of the policy. This case illustrates as much. Applying the D&O Coverage's exclusion for claims arising out of an employment relationship, Carolina Casualty attempts to deny coverage for Omeros's "single claim" consisting of an employment claim raised during the policy period and a non-employment claim raised after the policy period. But if Carolina Casualty's application of the single-claim clause were lawful, it would have had no obligation to provide D&O coverage for the *qui tam* claim even if Mr. Klein had raised it in his initial complaint. In that hypothetical circumstance, Carolina Casualty's interpretation of the single-claim clause would permit it to decline coverage for simultaneously-made (but related) claims consisting of an employment claim and a non-employment claim. The court doubts that it is reasonable to construe the policy to deny coverage to covered claims[3] merely because they were accompanied by excluded claims. More importantly, however, it is reasonable to construe exclusions that have nothing to do with the claims-made nature of the policy to apply individually to separate claims, even if the separate claims are considered a single claim for purposes of determining when they were made. If a reasonable construction of an ambiguous clause favors the insured, the court must adopt that construction. The court thus concludes that the single-claim clause does not govern when applying policy exclusions unrelated to the claims-made nature of the policy.

The court is aware of only one other case in which a court has considered the application of a single-claim clause to exclusions unrelated to the claims-made nature of a policy. In *Alanco Techs., Inc. v. Carolina Cas. Ins. Co.*, No. CV-040789-PHX-DGC, 2005 U.S. Dist. LEXIS 48104 (D. Ariz. May 19, 2005), the court considered a claims-made D&O policy that also contained an exclusion for claims made by one insured against another insured (an insured-versus-insured exclusion, or "IVI exclusion"). The

---

[3] Carolina Casualty does not contend that the *qui tam* claim, standing alone and made during the policy period, would be outside the scope of the D&O Coverage.

ORDER – 9

claim at issue was first identified in a letter from four directors of a company to the company's successor, *id.* at *3-4, then in a shareholder derivative suit that one of the successor's directors filed against the successor, *id.* at *2, and finally in an amended complaint in that suit, in which the predecessor company sued the successor, *id.* at *5. Carolina Casualty, invoking its single-claim clause and definition of "related wrongful acts," argued that the three claims were a single claim for purposes of applying the IVI exclusion.  The court rejected that argument:

> [Carolina Casualty] essentially argues that the application of the IVI exclusion to related claims depends solely on the nature of the claim first asserted.  Claims brought by insured persons would be covered, regardless of an IVI exclusion that applies directly to their claims, if an uninsured brought an earlier related claim. Conversely, claims by uninsured plaintiffs would be eliminated by the IVI exclusion if an insured person happened to make the first related claim. The Court sees little sense in such an arbitrary application of the IVI exclusion. Both insured and uninsured persons may bring related claims, and the exclusion of such claims under the IVI provision should be decided claim-by-claim.  Had [Carolina Casualty] intended another result, it could have drafted the single claim provision of Section VII.C to apply expressly to the IVI exclusion.  It did not, and the Court concludes that a claim-by-claim application of the IVI exclusion constitutes a more reasonable interpretation of the policy.

*Id.* at *8-9.  Although the *Alanco* decision does not bind this court, the court concurs with its reasoning.

## IV.  CONCLUSION

For the reasons previously stated, the court DENIES Carolina Casualty's motion for partial summary judgment (Dkt. # 16), except as to the issue regarding exhaustion of the Employment Coverage that Omeros conceded.

DATED this 12th day of March, 2013.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 10