HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROLINA CASUALTY INSURANCE COMPANY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>OMEROS CORPORATION, et al.,<br><br>　　　　　Defendants. | CASE NO. C12-287RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on a motion to compel discovery from Defendant Omeros Corporation. As stated below, the court GRANTS the motion in part and DENIES it in part. Dkt. # 29.

## II. BACKGROUND & ANALYSIS

This discovery motion arises from Omeros's first set of discovery requests, which consist in relevant part of interrogatories and requests for production of documents ("RFPs"). All of them concern Omeros's claims for coverage and for bad faith against its insurer, Carolina Casualty Insurance Company. Those claims arise in the wake of a suit against Omeros from its former chief financial officer, Richard Klein. The Klein suit, which raised both a qui tam claim arising under the False Claims Act as well a claim of unlawful retaliation in violation of the Act, recently reached an expensive settlement. Although the Klein suit has resolved, this suit remains. Carolina Casualty seeks

ORDER – 1

declaratory judgment as to the propriety of its coverage and defense decisions with respect to the Klein suit. Omeros contends that the Klein suit is covered and that Carolina Casualty acted in bad faith.

The court now turns to the parties' discovery disputes.

**A.     Claims Manuals and Related Materials (RFP No. 4)**

Omeros admits that Carolina Casualty has already produced both the claims handling procedures and claim management guidelines in effect at all relevant times. Omeros does not explain what additional documents responsive documents might exist. Carolina Casualty did not mention this issue in its opposition to the motion, and Omeros did not mention it in its reply. Because it is not clear if there is any dispute, the court declines to order any relief on this issue.

**B.     Bad Faith Claims Against Carolina Casualty and Christopher Ziemba (Interrogatory No. 7, RFP Nos. 7-8)**

In these requests, Omeros asks Carolina Casualty to list all claims of bad faith made against it in the past seven years. It also asks Carolina Casualty to disclose all documents relating to bad faith claims against Christopher Ziemba, the claims adjuster primarily responsible for handling Omeros's claim arising from the Klein suit.

These requests seek information that is either irrelevant or so marginally relevant that they cannot justify the burden they would impose on Omeros. The question before the court is whether Carolina Casualty acted in bad faith *in this case*. The existence of claims of bad faith in other cases is highly unlikely to shed light on Omeros's claim here. Carolina Casualty demonstrates that it has no reasonably expedient way to compile a list of all bad faith claims, and the court finds no justification for requiring it to assume the burden.

The same rationale applies to claims of bad faith involving Mr. Ziemba. Again, whether Mr. Ziemba acted in bad faith (or someone claimed he acted in bad faith) in another case sheds no light on whether he did so in this case. Carolina Casualty need not

ORDER – 2

search for documents evidencing old claims. The court doubts that there is anything relevant to Mr. Ziemba's bad faith in his personnel file, which Omeros also seeks. The court orders, however, that if there is anything in Mr. Ziemba's file regarding the Klein suit or Mr. Ziemba's handling of it, Carolina Casualty shall produce it. Alternatively, it may produce a declaration from someone with personal knowledge attesting that there are no Klein-related documents in Mr. Ziemba's personnel file.

C.  **Documents Relating to Whistleblower Carve-Out to the Insured-v.-Insured Exclusion (RFP No. 5)**

Even as Carolina Casualty contends that it has not attempted to rely on this carve-out, it admits that the parties have a dispute as to its scope. Carolina Casualty has already produced a few documents responsive to this request. If there are additional documents relevant to the "development, use, or meaning" of the whistleblower carve-out, Carolina Casualty shall produce them. Alternatively, it may produce a declaration from someone with personal knowledge that there are no more documents responsive to RFP No. 5.

D.  **Documents Relating to the Klein Claim (RFP Nos. 1-2)**

These requests cover all communications relating to the Klein claim. There is no dispute that these documents are relevant. After some prodding, Carolina Casualty has produced portions of its claim file and its electronic activity notes. It has not, however, produced any email communications regarding the Klein claim, even though the activity notes reference such emails. At a minimum, Carolina Casualty must produce emails responsive to these RFPs. It provides no justification for having withheld them to date.

Carolina Casualty admits that it has withheld (or perhaps merely redacted) some documents, and has memorialized its reasons in a privilege log. A few entries on that log claim that documents relating to Carolina Casualty's reserves for the Klein claim are "confidential." Carolina Casualty makes no attempt to defend those entries in response to Omeros's motion, and it shall produce the reserve-related documents it withheld in unredacted form.

ORDER – 3

The bulk of the documents on the privilege log assert the attorney-client privilege and work product protection for a host of documents reflecting communications between Omeros representatives and its coverage counsel. Recently, the Washington Supreme Court has clarified the scope of the attorney-client privilege and work product protection for an insurer in a bad faith claim from its insured. Critically, the Court held in *Cedell v. Farmers Ins. Co.*, 295 P.3d 239, 246 (Wash. 2013), that when an insured brings a bad faith claim, attorney-client privilege and work product protections are presumptively inapplicable to the insurer's claim-adjustment communications. An insurer may overcome the presumption "by showing its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own potential liability . . . ." *Id.* (listing communications regarding "whether or not coverage exists under the law" as an example of privileged communication). The *Cedell* Court was not content to allow the insurer to merely assert claims of privilege, it "entitled" the insurer "to an in camera review of the claims file, and to the redaction of communications from counsel that reflected the mental impressions of the attorney to the insurance company, unless those mental impressions are directly at issue in its quasi-fiduciary responsibilities to its insured." *Id.*

Carolina Casualty attempts to distinguish *Cedell* because it arose in the context of a bad faith claim from a first-party insured. The distinction is not persuasive. The *Cedell* court grounded its ruling in the quasi-fiduciary duty of an insurer to its insured, along with the public policy interest in regulating the business of insurance. 295 P.3d at 239. The latter consideration is just as important in a third-party claim. As to the former, the "duty of good faith is applicable to both first-party and third-party coverage." *St. Paul Fire & Marine Ins. Co. v. Onvia*, 196 P.3d 664, 668 (Wash. 2008).

Carolina Casualty asserts, without providing evidence, that it hired coverage counsel to give coverage advice and to represent it in this lawsuit, not to assist in claims

ORDER – 4

investigation or administration. Not only does it stand by its assertions of privilege, it contends that the in camera review procedure that *Cedell* mandates is not applicable in federal court.

Carolina Casualty's own claim log belies its contention that coverage counsel played no role in claims handling. In 2009, long before it helped Carolina Casualty bring this litigation, coverage counsel played a role in attempts to resolve the Klein suit. He recommended mediation. He concurred in defense counsel's recommendation of a settlement offer to Mr. Klein. This strongly suggests that coverage counsel did not merely advise Carolina Casualty about its coverage obligations. Carolina Casualty's most recent privilege log withholds communications on dates corresponding to the 2009 dates mentioned in the claim log. On this record, Carolina Casualty's assertion of privilege as to these communications is suspect. On the other hand, there is no evidence calling into question its assertions of privilege as to communications with coverage counsel from 2010 to 2012.

The court orders as follows. Carolina Casualty shall, no later than April 30, 2013 produce to Omeros a supplement to its privilege log in which it provides as detailed an explanation as is reasonably necessary to support its assertion of privilege. For example, for any communications with coverage counsel after the Klein suit settled, it seems quite unlikely that Carolina Casualty's communications with coverage counsel related to anything except its potential liability to Omeros. By contrast, during the period in 2009 when it appears that coverage counsel took an active role in resolving the Klein dispute, Carolina Casualty may have no basis for withholding documents. Omeros shall review the supplement to the privilege log, then meet and confer with Carolina Casualty. The court urges both parties to be reasonable. Among other things, they might consider whether to agree that Carolina Casualty will not waive any applicable privilege by disclosing documents reflected in the privilege log.

ORDER – 5

If, at the conclusion of this process, there are still disputes remaining, Carolina Casualty shall submit any disputed documents for in camera review. That submission must come no later than May 11, 2013. The parties shall not submit additional briefing regarding that submission. In ordering (at least potentially) an in camera review, the court does not suggest that the *Cedell* court's in camera procedure is mandatory in federal court. It merely exercises its authority to order an in camera review to resolve this dispute.

### III.  CONCLUSION

As previously stated, the court GRANTS Omeros's motion to compel in part and DENIES it in part. Where the court has not stated a specific deadline for the production of documents or another disclosure, Carolina Casualty shall produce the documents or make the disclosure no later than April 30, 2013.

DATED this 12th day of April, 2013.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 6